## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JENNIE DARROW,**<br><br>　　**Plaintiff,**<br><br>　　**v.**<br><br>**INGENESIS, INC. and VERONICA MUZQUIZ EDWARDS,**<br><br>　　**Defendants.** | Civ. No. 19–17027 (KM) (ESK)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Defendant InGenesis, Inc. employed plaintiff Jennie Darrow for about a year before it terminated her. Darrow alleges that by firing her InGenesis and its owner, defendant Veronica Muzquiz Edwards, retaliated against her in violation of New Jersey's Conscientious Employee Protection Act, N.J. Stat. § 34:19-1 *et seq.* Now before the Court is Defendants' motion, seeking an order (i) transferring venue of this matter to the Western District of Texas, pursuant to 28 U.S.C. § 1404, or, in the alternative (ii) staying this matter and compelling arbitration, pursuant to 9 U.S.C. §§ 3 & 4, or dismissing this case, pursuant to Fed. R. Civ. P. 12(b)(1). For the following reasons, the portion of the motion that seeks a transfer of venue is **GRANTED**; the part of the motion that seeks a dismissal or stay of this matter is **DENIED**.

### I.   BACKGROUND

Plaintiff Jennie Darrow is a resident of New Jersey. (DE 1 ¶ 9).[1] Defendant Veronica Muzquiz Edwards is a resident of Texas. (DE 1 ¶ 9). Edwards is the founder, CEO, and owner of defendant InGenesis, Inc. (DE 1 ¶¶ 9 & 15). InGenesis is a Texas corporation, registered to do business in New Jersey, and has its principal place of business in San Antonio, Texas. (DE ¶¶ 9 & 14). InGenesis is a staffing company that provides staffing-related services to

---

[1] "DE __" refers to the docket entry number in this case.

large institutional and corporate clients. (DE 1 ¶ 4). Darrow established a career in that industry before joining InGenesis. (DE 1 ¶¶ 16–17).

In July 2018, InGenesis hired Darrow to serve as the executive director of its Managed Service Provider Programs division. (DE 1 ¶¶ 3 & 23). Darrow and InGenesis both understood that Darrow would exclusively work from her home in New Jersey and remotely report to supervisors in Pennsylvania and Texas. (DE 1 ¶ 24 & DE 14-7 ¶ 12). During the eleven months she worked at InGenesis, Darrow traveled to Texas five times. (DE 14-7 ¶ 11).

When InGenesis hired Darrow, the two sides executed an arbitration agreement. (DE 6-3). The agreement required the parties to resolve all disputes before a neutral arbitrator in Houston:

> **This Arbitration Agreement modifies the legal and equitable rights and obligations of InGenesis, Inc. ("InGenesis") and Employee. Read it carefully as InGenesis and Employee are bound by these provisions regarding past, current and future matters and issues, acts and/or omissions. Enforcement of the Arbitration Agreement shall be governed by the Federal Arbitration Act.**
>
> Employer InGenesis and Employee agree that, for many reasons. lawsuits and court actions are disadvantageous to both. Therefore, they agree that any claim or dispute between them or against the other or any agent or employee of the other, whether related to the employment relationship or otherwise, including those created by practice, common law, court decision, or statute, now existing or created later, including any related to allegations of violations of state or federal statutes related to discrimination, harassment, and/or retaliation[](collectively referred to as "Claims"), shall be resolved by neutral binding arbitration by the American Arbitration Association, under the rules of procedure in effect at the time any claim is made. Federal Rule of Civil Procedure 68 ("Offer of Judgment") shall apply, as well.
>
> Any disputes shall be arbitrated by an arbitrator pursuant to the Employment Rules of the Association at the Association's regional office in Houston, Texas. The decision of the arbitrator shall be final and conclusive on the parties and shall be a bar to any suit, action or proceeding instituted in any federal, state or local court

or before any administrative tribunal (with the exception of statutorily mandated pre-arbitration administrative requirements).

Each party shall pay its own costs of arbitration, except that Employer agrees to pay for one day of arbitration hearings. Fees paid are subject to (including attorneys' fees) the award of fees, as provided by law and arbitration rules. Any award of the arbitrator may be entered as a judgment in any court of competent jurisdiction. **By signing this Agreement, the parties are giving up any right they might have to a jury trial.**

(DE 6-3 at 1). The agreement also included choice-of-law and forum-selection clauses:

Recognizing that services may be rendered in various States and/or territories of the United States, and the need for consistency in administering this agreement and the overall relationship between InGenesis and Employee, Employee and InGenesis agree that the terms of this Arbitration Agreement shall be construed and enforced in accordance with the laws of the State of Texas without regard to the choice of law principles thereof, including, but not limited to, any worker's compensation matter.

. . .

Subject to paragraph 1, the parties further agree that all actions or proceedings arising in connection with this Agreement, including injunctive relief, shall be tried and litigated exclusively in the Federal Courts of the Western District of Texas, San Antonio Division, or in the State District Courts of Texas located in Bexar County, Texas. The aforementioned choice of venue is intended by the parties to be mandatory and not permissive in nature, thereby precluding the possibility of litigation between the parties with respect to or arising out of this Agreement in any jurisdiction other than specified in this paragraph. Each party waives any right it may have to assert the doctrine of forum non conveniens or similar doctrine or object to venue with respect to any proceeding brought in accordance with this paragraph, and stipulates that the Federal Courts of the Western District of Texas, San Antonio Division, or in the State District Courts of Texas located in Bexar County, Texas, shall have in personam jurisdiction and venue over each of them for the purpose of litigating any dispute, controversy, or proceeding arising out of or related to this Agreement.

(DE 6-3 at 1–2). The record reflects that Darrow electronically signed the agreement and that Edwards physically countersigned. (DE 6-3 at 2). Their signatures are both dated July 2, 2018. (DE 6-3 at 2).

On July 10 and 12, 2018, Darrow and InGenesis also signed certain restrictive agreements that addressed her duty of loyalty to the company. (DE 14-3 & DE 14-4). The agreements contained non-disclosure, non-solicitation, and non-compete clauses that purported to obligate Darrow to InGenesis. (DE 14-3 & DE 14-4).

At InGenesis, Darrow oversaw the accounts of clients with whom InGenesis had contracted to perform background checks and drug screenings. (DE ¶ 30). Several months into her tenure at InGenesis, Darrow became concerned that InGenesis was not properly conducting background checks and drug screenings of its clients' employees. (DE 1 ¶ 33). In March 2019, Darrow raised her concerns to her supervisor and to her colleague's supervisor. (DE 1 ¶ 34). Unsatisfied with the response she received, Darrow continued to press her supervisors on the issue. (DE 1 ¶ 41).

On April 26, 2019, Edwards removed Darrow from the largest of her four client accounts. (DE 1 ¶ 47). In May 2019, Darrow again voiced to her superiors concerns about a different client. (DE 1 ¶¶ 49–50). She received no meaningful response. On May 24, 2019, Edwards fired Darrow, telling her that her position had been eliminated. (DE 1 ¶¶ 51–54).

Darrow now sues InGenesis and Edwards under the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. § 34:19-1 *et seq.* She claims that InGenesis and Edwards fired her in retaliation for her having engaged in protected activity. (DE 1 ¶ 60–61). The alleged protected activity consists of Darrow's complaints about InGenesis's failure to conduct background checks and drug screenings, which Darrow claims were contractually required. (DE 1 ¶¶ 33–52).

Darrow filed this lawsuit on August 21, 2019. (DE 1). On September 13, 2019, InGenesis and Edwards moved in this Court for an order (i) dismissing

4

this matter; (ii) staying this matter and compelling arbitration; or (iii) transferring the matter to the Western District of Texas. (DE 6).

## II.   DISCUSSION

### A. The Motion to Transfer Venue

The law governing transfer of venue where the parties have entered into a forum-selection agreement is best understood against the background of cases in which no such agreement is present.

In general, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *See* 28 U.S.C. § 1391(b); *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) ("The [relevant] test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim . . . ."). If venue is improper, a court "shall dismiss, or if be in the interests of justice, transfer such case to any district in which it could have been brought." 28 U.S.C. § 1406(a). The Rule 12(b)(3) movant has the burden of demonstrating that venue is improper. *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724–25 (3d Cir. 1982).

Even if venue is properly laid, a court may transfer the case to another district court where the case might have been brought based on the convenience of the parties and witnesses. *See* 28 U.S.C. § 1404(a). A district court has "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness consideration weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)). That decision is to be guided by a number of non-exclusive public and private interest factors:

> The private interests have included: plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records (similarly limited to the

extent that the files could not be produced in the alternative forum).

> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home; the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (internal citations omitted). The burden of persuasion rests with the party requesting a change of venue. *Id.*

The allegations and evidence show that InGenesis is incorporated in Texas and that Darrow's chain of command flowed through its San Antonio headquarters. San Antonio is located in the Western District of Texas. Edwards is also a resident of Texas, and the alleged retaliation against Darrow occurred in Texas—again, in San Antonio. Accordingly, Defendants have satisfied their burden of showing that venue would be proper in the transferee district, the Western District of Texas, because "a substantial part of the events or omissions giving rise to the claim occurred" in that district. *See* 28 U.S.C. § 1391(b).

The United States Supreme Court has instructed that if a contract contains a valid forum selection clause, then courts must "transfer the case unless extraordinary circumstances unrelated to the convenience of parties clearly disfavor a transfer." *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49 (2013). My analysis of the factors, then, is governed by that principle.

### 1. The Private Interests

Under a typical § 1404(a) analysis, courts must evaluate whether transfer is appropriate based on a series of private and public interest factors to determine whether "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different

forum." *Jumara*, 55 F.3d at 879. *See also In re Howmedica Osteonics Corp.*, 867 F.3d 390, 403–05 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 1288 (2018).

However, when the parties have agreed to a forum-selection clause, as in this case, the Supreme Court has held that courts must "adjust their usual Section 1404(a) analysis in three ways." *Atl. Marine Constr. Co.* at 581. First, the plaintiff's choice of forum holds no weight, and the plaintiff bears the burden of establishing that transfer to the agreed upon forum is unwarranted. *Id.* at 581–82. Second, when a party flouts its contractual obligation under a forum-selection clause and files suit in a different forum, "a 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* at 582. Third, the court should not consider arguments about the parties' private interests. As the Court stated in *Atl. Marine Constr. Co.*, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient . . . ." *Id.* at 582.

Out of an abundance of caution, I will nonetheless briefly consider the private factors.

### i.   Plaintiff's forum preferences

In most cases, the plaintiff's forum choice is "a paramount consideration in any determination of a transfer request." *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970). A forum-selection clause, however, trumps this consideration. *See Jumara,* 55 F.3d at 880.

The Third Circuit has explained that "while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." *Id.* at 880. Indeed, "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." *Id.* Any "deference to the filing forum would only encourage parties to violate their contractual obligations." *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir.1989); *see also Wieczenski v. The Brake Shop,* Civ. No. 93–5673, 1994 WL 111082 at *7 (D.N.J. Mar.28, 1994)

("[W]hen a party brings suit upon a contract that contains an enforceable forum selection clause, that party has already effectively 'chosen' the forum in which to litigate the dispute.").

The evidence plainly reveals that the arbitration agreement designates the Western District of Texas and the Texas state courts in Bexar County[2] as the exclusive fora to resolve disputes between Darrow and InGenesis. Accordingly, the Court places no weight on Darrow's choice of the District of New Jersey as a forum.

### ii.  Defendants' forum preferences

As evidenced by this motion, Defendants prefer to litigate or arbitrate this dispute in the Western District of Texas. This factor favors a transfer of venue.

### iii.  Whether the claim arose elsewhere

Darrow lives and works in New Jersey. She also received news of her termination in New Jersey, and she felt the effects of the alleged retaliation in New Jersey. However, InGenesis and Edwards are both located in Texas, and the allegedly retaliatory conduct occurred there as well. Accordingly, this factor, even if it tips somewhat to Darrow's side, is not determinative.

### iv.  The convenience of the parties

Darrow argues that if this case is transferred to Texas, she will be inconvenienced because she will have to "hire Houston-based counsel competent and willing to prosecute NJCEPA claims in arbitration." (DE 14 at 23). Darrow also argues that "[a]ny inconvenience or additional cost attendant to Defendant Edwards having to travel to New Jersey for the arbitration hearing is dwarfed by the burden and hardship traveling thousands of miles to Houston will cause to the presently unemployed Ms. Darrow." (DE 14 at 23). Litigating a dispute in an out-of-state forum presents a greater inconvenience to a sole plaintiff than it does for a corporate defendant. Nonetheless, InGenesis and Edwards would also be inconvenienced by litigating in New Jersey instead

---

[2]      Bexar County encompasses San Antonio.

of Texas. Therefore, this factor weighs only slightly in Darrow's favor. I note also that Darrow did choose to contract with a Texas entity, and traveled to Texas in connection with her work.

### v.    The location of books and records

This factor has little bearing. Courts should only consider the location of the books and records where "the witnesses may actually be unavailable" or where the documents may "not be produced in the other forum." *Jumara,* 55 F.3d at 879. Neither party has demonstrated the lack of availability, in either forum, of witnesses or documents.

## 2. The Public Interest

The Supreme Court has instructed, that "[b]ecause [the public interest] factors will rarely defeat a transfer motion, the practical result is that the forum-selection clauses should control except in unusual cases." *Atl. Marine Constr. Co.* at 582. Nonetheless, I will briefly consider the public factors.

### i.    The enforceability of the judgment

Neither party has argued, and the Court does not believe, that the Western District of Texas cannot enforce any order or judgment that emanates from this dispute. This factor has no effect.

### ii.    Practical considerations

Particularly because this case is at an early stage, practical considerations do not warrant its retention in this District. The Court is confident that the Western District of Texas can adjudicate this matter as efficiently as the District of New Jersey.

### iii.    Relative administrative difficulties

Neither party has identified any administrative difficulties associated with adjudicating this dispute in either forum. This factor is neutral.

### iv.    Local interests

Both localities have an interest in the dispute. New Jersey has an interest in protecting its citizens, and Texas has an interest is protecting its own. This factor is not determinative.

### v.   Public policies of the fora

Darrow argues that New Jersey has a public policy, embodied in the NJCEPA statute, of protecting its employees who object to workplace practices that endanger the safety and well-being of the public. Texas law, she says, is less protective. (DE 14 at 11). Defendants point out, however, that New Jersey also has a strong public policy of upholding contractual choices such as forum-selection clauses. (DE 6-1 at 5). On balance, the factor is neutral.

### vi.   Familiarity of the trial judge with applicable state law

Darrow argues that Texas-based judges and arbitrators are less familiar with CEPA than their New Jersey counterparts. (DE 14 9–10 & 13). However, Defendants rightly point out that the arbitrability of the dispute is a threshold issue. (DE 6-1 at 13). Under the terms of the arbitration agreement, that determination is subject to Texas law. Accordingly, this factor favors a transfer, or is at worst neutral.

In sum, the *Jumara* factors weigh in favor of transferring this action, with the forum-selection clause forming the strongest, indeed nigh-dispositive, basis for that decision. I have found none of the "extraordinary circumstances unrelated to the convenience of parties [that] clearly disfavor a transfer." *See Atl. Marine Constr*, 571 U.S. at 49.

The forum-selection clause that designates the Western District of Texas therefore determines the proper forum for this dispute. In the short run, that dispute concerns the motion to compel arbitration. But even if that motion is denied and the remainder of the dispute is heard in court, that court will be the U.S. District Court for the Western District of Texas.

Defendants' motion is therefore **GRANTED** to the extent it seeks a transfer of venue.

### B. The Motion to Compel Arbitration

Section 4 of the FAA sets forth the procedure when a court is presented with a petition to compel arbitration. That section provides, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of
> another to arbitrate under a written agreement for arbitration may

10

> petition any United States district court . .  for an order directing
> that such arbitration proceed in the manner provided for in such
> agreement. . . . The court shall hear the parties, and upon being
> satisfied that the making of the agreement for arbitration or the
> failure to comply therewith is not in issue, the court shall make an
> order directing the parties to proceed to arbitration in accordance
> with the terms of the agreement. . . . If the making of the
> arbitration agreement. . . be in issue, the court shall proceed
> summarily to the trial thereof.

9 U.S.C. § 4. "[A]s a matter of federal law," applicable in the Western District of Texas as it would be here, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). *See also Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421 (2017).

The plaintiff raises a number of objections to arbitration of claims, the splitting of costs, and so forth. For the reasons expressed above, those arbitrability issues will be resolved in the transferee district, the Western District of Texas, in accordance with federal law and the Texas law of contracts. For similar reasons, I leave any associated decisions about whether to stay or dismiss the case to the discretion of that court.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion to transfer this case to the Western District of Texas is **GRANTED**. Insofar as the motion seeks further relief, such as a dismissal or stay of this matter, it is **DENIED**.

A separate order will issue.

Dated: April 29, 2020

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**