**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JENNIE DARROW, | § | |
| *Plaintiff*, | § | |
| | § | SA-20-CV-00530-XR |
| v. | § | |
| | § | |
| INGENESIS INC., DR. VERONICA | § | |
| MUZQUIZ EDWARDS, | § | |
| *Defendants*. | § | |

## ORDER

On this date, the Court considered Defendants' Motion to Dismiss and Compel Arbitration (ECF No. 42), Plaintiff's Response (ECF No. 45), and Defendants' Reply (ECF No. 46).  The Court also considered the oral arguments of the parties made in open court on June 30, 2020.  After careful consideration, the Court will **GRANT** Defendants' motion.

## BACKGROUND

### I.    Procedural Background

This case arises out of an employment-related dispute between Plaintiff Jennie Darrow ("Plaintiff") and her former employer Defendant InGenesis Inc. ("InGenesis") and its CEO and founder Defendant Dr. Veronica Muzquiz Edwards ("Edwards") (collectively, "Defendants"). InGenesis is a staffing company that provides staffing-related services for large institutional and corporate clients.  The company is a Texas corporation based in San Antonio.  InGenesis hired Plaintiff in July 2018 to serve as its Executive Director of Managed Service Provider Programs. The parties agreed that Plaintiff would perform her job remotely from her home in New Jersey.

Plaintiff alleges that she enjoyed success in her role with InGenesis and managed some of the company's biggest clients, including the University of Texas ("UT") and the State of Ohio.

1

According to Plaintiff, a few months into her employment, she discovered InGenesis was consciously failing to conduct mandatory background checks and drug screenings on candidates that it helped staff to highly sensitive hospital and prison positions at UT and the State of Ohio. Plaintiff alleges InGenesis had both a contractual and a moral duty to ensure these background checks and drug tests were completed, and that the clients relied upon InGenesis to perform these checks. Plaintiff claims that she repeatedly complained to InGenesis officials but was met with inaction and retaliation in the form of removal from the UT account and eventual termination of her employment without explanation on May 24, 2019.

Plaintiff filed suit on August 21, 2019 in the U.S. District Court for the District of New Jersey, alleging a single cause of action against both Defendants: retaliation in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"). Defendants filed a motion to dismiss or to compel arbitration and to transfer the case to this Court. ECF No. 6. After briefing on the issue, Judge Kevin McNulty issued an opinion finding that the parties had agreed to a forum-selection clause that designated the Western District of Texas as the appropriate forum. ECF No. 28. Judge McNulty granted Defendants' motion to transfer venue to this Court, but declined to compel arbitration and left "any associated decisions about whether to stay or dismiss the case to the discretion of" this Court. *Id.* at 11; ECF No. 29. The case was transferred to this Court on April 29, 2020, and the Court ordered Defendants to file any further motion to compel arbitration, stay, or dismiss no later than June 1, 2020. ECF No. 33.

On June 1, Defendants filed their present motion to dismiss and compel arbitration, or alternatively, to stay proceedings pending arbitration. ECF No. 42. Defendants argue that Plaintiff executed a binding Arbitration Agreement requiring arbitration of the claim asserted in this litigation. *Id.* at 2. They further argue that because Plaintiff's sole claim is arbitrable, the entire

case should be dismissed after the Court compels arbitration, or alternatively stayed pending the outcome of arbitration. *Id.* at 7. In response, Plaintiff argues that there is no valid agreement to arbitrate. ECF No. 45 at 1–3. Plaintiff further urges there is a conflict within the Arbitration Agreement regarding the amount of arbitration expense to be paid by Plaintiff, and that this Court should limit Plaintiff's portion of the arbitration expenses to $300. *Id.* at 4. Finally, Plaintiff asks that if the motion to compel arbitration is granted, this lawsuit be stayed rather than dismissed. *Id.*

## II.    Contracts at Issue

Defendants' claim that this dispute is subject to arbitration is based upon the Arbitration Agreement executed by the parties on July 2, 2018. ECF No. 42-2. Plaintiff and Defendant Edwards electronically signed that two-page agreement. *Id.* at 2. In paragraph 1, the Arbitration Agreement provides, in relevant part:

> **This Arbitration Agreement modifies the legal and equitable rights and obligations of InGenesis, Inc. ("InGenesis") and Employee. Read it carefully as InGenesis and Employee are bound by these provisions regarding past, current and future matters and issues, acts and/or omissions. Enforcement of the Arbitration Agreement shall be governed by the Federal Arbitration Act.**
>
> Employer InGenesis and Employee agree that, for many reasons, lawsuits and court actions are disadvantageous to both. Therefore, they agree that any claim or dispute between them or against the other or any agent or employee of the other, whether related to the employment relationship or otherwise, including those created by practice, common law, court decision, or statute, now existing or created later, including any related to allegations of violations of state or federal statutes related to discrimination, harassment, and/or retaliation (collectively referred to as "Claims"), shall be resolved by neutral binding arbitration by the American Arbitration Association, under the rules of procedure in effect at the time any claim is made…
>
> Any disputes shall be arbitrated by an arbitrator pursuant to the Employment Rules of the Association at the Association's regional office in Houston, Texas. The decision of the arbitrator shall be final and conclusive on the parties and shall be a bar to any suit, action or proceeding instituted in any federal, state or local court….
>
> Each party shall pay its own costs of arbitration, except that the Employer agrees to pay for one day of arbitration hearings. Fees paid are subject to (including

attorneys' fees) the award of fees, as provided by law and arbitration rules.  Any award of the arbitrator may be entered as a judgment in any court of competent jurisdiction.  **By signing this Agreement, the parties are giving up any right they might have to a jury trial.**

*Id.* at 1 (emphasis in original).  The Arbitration Agreement also contains a "Choice of Law" provision, which provides that the parties "agree that the terms of this Arbitration Agreement shall be construed and enforced in accordance with the laws of the State of Texas…." *Id.*  Finally, the Agreement includes a "Forum Selection" provision:

> Subject to paragraph 1, the parties further agree that all actions or proceedings arising in connection with this Agreement, including injunctive relief, shall be tried and litigated exclusively in the Federal Courts of the Western District of Texas, San Antonio Division, or in the State District Courts of Texas located in Bexar County, Texas.  The aforementioned choice of venue is intended by the parties to be mandatory and not permissive in nature, thereby precluding the possibility of litigation between the parties with respect to or arising out of this Agreement in any jurisdiction other than that specified in this paragraph….

*Id.* at 1–2.

Plaintiff also claims two additional contracts are relevant here: the "Restrictive Agreements" and the amendments thereto, both signed by the parties and executed on July 10, 2018.  ECF Nos. 45-2, 45-3.  The Restrictive Agreements describe Plaintiff's "Duty of Loyalty to Employer," including agreements of non-disclosure of proprietary and confidential information, non-solicitation of employees or clients of InGenesis, and non-competition.  ECF No. 45-2 at 1–3.  The Restrictive Agreements document also contains a provision regarding choice of law and forum selection:

> These Agreements shall be governed by the laws of the State of Texas….  Any litigation or proceeding brought by either party involving the enforcement of these Agreements or the rights, duties, or obligations of any party shall be brought exclusively in the state or federal courts sitting in San Antonio, Bexar County, Texas.  If either party shall commence any action or proceeding against the other party related to a breach or alleged breach of this Agreement, including without limitation any action for injunctive or equitable relief or for a judicial declaration

of rights hereunder, the prevailing party in such action shall be entitled to recover reasonable costs, attorneys' fees and expenses.

*Id.* ¶ 8.  The Amendment to Restrictive Agreements, also signed by the parties on July 10, 2018, modifies the non-competition provisions and provides for an application for waiver or modification of any provision of the Agreements.  ECF No. 45-3.  The Amendment further states "All parts of the Agreements not amended herein remain in full force and effect."  *Id.* ¶ 3.

## DISCUSSION

### I.      Is Plaintiff's claim subject to arbitration?

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Act "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).  "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts."  *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (internal quotations and citations omitted).  Thus, the FAA establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms."  *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Although there is a strong federal policy favoring arbitration, that policy "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties."  *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).  The FAA "does not require parties to arbitrate when they have not agreed to do so."  *Volt*, 489 U.S. at 478.  In other words,

"arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).  Rather, the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478.

Determining whether to compel Plaintiff's claims to arbitration requires the application of a two-pronged test. *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002), *opinion supplemented on denial of reh'g*, 303 F.3d 570 (5th Cir. 2002).  The first prong is aimed at determining whether the parties agreed to arbitrate the dispute in question. *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013).  This prong involves two sub-inquiries: 1) whether a valid agreement to arbitrate exists between the parties, and 2) whether the agreement covers the dispute in question. *Id.*  Under this prong, the court, not the arbitrator, typically decides whether the parties have agreed to arbitrate the dispute in question. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986).[1]

The second prong requires a determination of "whether legal constraints external to the parties' agreement foreclosed the arbitration" of the relevant claims. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).  If the first prong is satisfied, arbitration must be compelled unless some "federal statute or policy renders the claims nonarbitrable." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002).  The party seeking to compel arbitration bears the initial burden of establishing the existence of an arbitration agreement (and

---

[1] In some cases, if a court makes the threshold determination that there is an agreement to arbitrate, the agreement may contain a valid delegation clause which requires the court to submit the question of whether the particular claim falls within the arbitration agreement to the arbitrator.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019) ("the question of arbitrability is itself a question of contract.  The [FAA] allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."); *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016).  None of the parties here contend there is a delegation clause that requires this Court to submit the question of arbitrability to the arbitrator.

that the asserted claims fall within its scope); the burden then shifts to the party resisting arbitration to present evidence showing why the arbitration agreement should not be enforced. *Kershaw v. CB Restaurants, Inc.*, 5:15-CA-462-OLG, 2015 WL 12743609, at *1 (W.D. Tex. Aug. 6, 2015) (citing *Wachovia Sec., LLC v. Emery*, 186 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2005, no pet.)).

      a.  Prong One: Did the parties agree to arbitrate the dispute in question?

          i.  *Is there a valid agreement to arbitrate between the parties?*

The validity of an agreement to arbitrate is evaluated "under general contract law principles." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996). Under Texas law, parties form a binding contract when there is (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Lucchese Boot Co. v. Licon*, 473 S.W.3d 390, 400 (Tex.App.—El Paso 2015, no pet.).

Defendants contend that the Arbitration Agreement is a valid agreement between the parties under principles of contract law in Texas. ECF No. 42 at 5. Specifically, Defendants cite Texas law holding an employer may enforce an arbitration agreement entered into during an at-will employment relationship, and holding that a mutual obligation to arbitrate is sufficient consideration to support a valid and enforceable agreement. *Id.* at 6.

Plaintiff responds that there is no valid agreement to arbitrate because there was no "meeting of the minds" due to the purported "inconsistency" between the agreement to arbitrate and the forum selection provision within the Arbitration Agreement, and between the Arbitration Agreement and the Restrictive Agreements. Pl.'s Resp. at 1. According to Plaintiff, Texas law requires "harmonization"—that is, to "examine and consider the entire writing in an effort to

harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* at 2 (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W. 3d 323, 333 (Tex. 2011)).  Plaintiff also cites the well-known proposition that ambiguous language must be construed against the drafter.  *Id.* at 3 (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62–63 (1995)).  Additionally, Plaintiff cites an unpublished Fifth Circuit opinion that recently upheld the denial of a motion to compel "because of a similar conflict within the agreements signed by the parties."  *Id.* at 3 (citing *O'Shaughnessy v. Young Living Essential Oils, L.C.*, No. 19-51169, 2020 WL 2078368 (5th Cir. Apr. 28, 2020)).

Defendants reply that the agreement to arbitrate is clear and unequivocal, and that *O'Shaughnessy* provides no support for Plaintiff's attempt to escape arbitration.  ECF No. 46 at 1–4.

The Court agrees with Defendants that there is a valid agreement to arbitrate between the parties.  The Arbitration Agreement meets all of the elements required for an enforceable agreement, as demonstrated by the signature of both parties and the plain terms of the Agreement.  Plaintiff does not dispute that she read and signed the Agreement, which clearly states that it "modifies the legal and equitable rights and obligations" of the parties.  ECF No. 42-2 ¶ 1.  The purported "inconsistencies" Plaintiff cites to argue there was no "meeting of the minds" are not, in fact, inconsistencies.  The provisions of the Arbitration Agreement and of the Restrictive Agreements can be read to "give effect to all…provisions and to render them consistent with each other."  *Mastrobuono*, 514 U.S. at 62–63.  The agreement to arbitrate requires Plaintiff's claim against InGenesis—clearly a dispute "related to allegations of violations of state or federal statutes related to…retaliation"—to "be resolved by neutral binding arbitration."  ECF No. 42-2 ¶ 1.  The forum selection provision of the Arbitration Agreement provides that "subject to" the agreement

to arbitrate, any disputes about the Agreement itself "shall be tried and litigated exclusively in" federal or state court in San Antonio, Bexar County, Texas.  *Id.* ¶ 3.  And the Restrictive Agreements "miscellaneous" provisions related to choice of law and forum selection relate only to "[a]ny litigation or proceeding brought by either party involving the enforcement of these Agreements or the rights, duties, or obligations of any party" as related to the Restrictive Agreements alone.  ECF No. 45-2 ¶ 8.  Read together, these agreements make clear that there was "mutual understanding and assent" that some disputes between the parties, including those related to retaliation, would be subject to arbitration; and that any questions about the enforcement of the Arbitration Agreement or the Restrictive Agreements would be brought in federal or state court in Texas.  *Bandera Cty. v. Hollingsworth*, 419 S.W.3d 639, 645 (Tex.App.—San Antonio 2013, no pet.) (defining "meeting of the minds").

The Fifth Circuit's unpublished opinion in *O'Shaughnessy* is wholly distinguishable from this case and does not, as Plaintiff contends, involve "similar conflicts within the agreements signed by the parties."  ECF No. 45 at 3.  In *O'Shaughnessy*, the plaintiff joined a company as a member by signing an online member agreement.  That member agreement contained choice of law and forum selection provisions, a merger clause providing it was "the entire agreement" between the parties, and also incorporated by reference two other documents: the Policies and Procedures the Compensation Plan.  The plaintiff was not required to sign either of the two incorporated documents.  The Policies and Procedures document contained an arbitration clause and choice of law and forum selection provisions for "any matter not subject to arbitration." Magistrate Judge Hightower found the member agreement and the arbitration clause in the Policies and Procedures "irreconcilably conflicted with each other and could not be harmonized," and that there was no valid agreement to arbitrate under the applicable Utah law.  *O'Shaughnessy v. Young*

*Living Essential Oils, LC*, No. 1:19-CV-412-LY, 2019 WL 5296359, at *5 (W.D. Tex. Oct. 18, 2019), *report and recommendation adopted* No. 19-CV-412-LY, 2019 WL 8587182 (W.D. Tex. Nov. 27, 2019), *aff'd* No. 19-51169, 2020 WL 2078368 (5th Cir. Apr. 28, 2020).   Judge Yeakel agreed, and the Fifth Circuit affirmed, 2020 WL 2078368, at *6, reasoning that the pertinent arbitration clause in the Policies and Procedures document—that "any controversy or claim arising out of or relating to the Agreement, or the breach thereof, will be settled by arbitration"—was in direct conflict with the choice of law and forum selection provision in the agreement itself—that "[a]ny legal action concerning the Agreement will be brought in the state and federal courts" in Salt Lake City, Utah.   *Id.* at *4.   Moreover, the Fifth Circuit observed "there is no limiting language" in the choice of law and forum selection provision "or anywhere else in the Agreement…suggesting that it only applies to disputes not subject to arbitration."   *Id.*

In contrast, in this case the relevant provisions are not in direct conflict and can be harmonized to give effect to the agreement to arbitrate; there is limiting language in the forum selection and choice of law provision in the Arbitration Agreement ("[s]ubject to paragraph 1") and the Restrictive Agreements ("involving the enforcement of these Agreements"); and the Restrictive Agreements were not incorporated into the Arbitration Agreement, and can clearly be read as independent of the Arbitration Agreement and relate only to Plaintiff's duty of loyalty.   For all of these reasons, the Court finds there was a valid agreement to arbitrate.

*ii.   Does the agreement to arbitrate cover Plaintiff's claim?*

Once a valid agreement to arbitrate is established, the second sub-inquiry asks: does the agreement cover the dispute in question?   Defendants argue that Plaintiff's claim in this case is subject to the valid agreement to arbitrate.   Specifically, they point to the Arbitration Agreement's language that requires arbitration of claims or disputes "related to allegations of violations of state

10

or federal statutes related to discrimination, harassment, and/or retaliation."  ECF No. 42-2.

Because Plaintiff's claim is one for retaliation in violation of the New Jersey CEPA statute,

Defendants argue her claim is clearly subject to arbitration.  Plaintiff does not contend in her

response that her specific claim is not subject to the Arbitration Agreement—just that in her view

the agreement to arbitrate is not valid.  *See generally* ECF No. 45.  The Court agrees with

Defendants that under the clear language of the valid Arbitration Agreement, Plaintiff's CEPA

retaliation claim is one that is subject to the agreement to arbitrate.

> b. Prong Two: Do any external legal constraints foreclose the arbitration of Plaintiff's claim?

The parties do not specifically address the second prong of the test for whether Plaintiff's

claim should be compelled to arbitration.  The Court finds that there are no "legal constraints

external to the parties' agreement [that] foreclose[] the arbitration" of Plaintiff's claim.  In fact,

courts have consistently found claims brought under CEPA to be subject to arbitration under valid

agreements.  *See, e.g.*, *Littman v. Morgan Stanley Dean Witter*, 337 N.J. Super. 134, 144–49 (App.

Div. 2001) (enforcing arbitration of a CEPA claim); *Singer v. Commodities Corp.*, 292 N.J. Super.

391 (App. Div. 1996) (same); *Bleumer v. Parkway Ins. Co.*, 277 N.J. Super. 378 (App. Div. 1994)

(CEPA claims "are subject to arbitration under an arbitration clause in a private employment

agreement subject to the FAA").  Therefore, both prongs of the arbitrability test are met, and

Plaintiff's claim against Defendants is subject to the valid agreement to arbitrate executed by the

parties.

**II.      Should this case be dismissed or merely stayed?**

The FAA provides that when an issue in a lawsuit is referable to arbitration, a federal

district court must, "on application of one of the parties stay the trial of the action until such

arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  However,

the Fifth Circuit has held that "when all of the issues raised in the district court must be submitted to arbitration," dismissal of the claim may be proper.  *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).  Even in these circumstances, though, "dismissal is not required; rather, the district courts have discretion to do so, and also have discretion to stay the case or dismiss without prejudice."  *Glazer's Inc. v. Mark Anthony Brands Inc.*, SA-11-CV-977-XR, 2012 WL 2376899, at *6 (W.D. Tex. June 22, 2012) (citing *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 331 n.9 (5th Cir. 2003)).  Entry of a stay as opposed to a dismissal may be appropriate where "the district court perceives that it might have more to do than execute the judgment once arbitration has been completed."  *Apache Bohai Corp.*, 330 F.3d at 309.

Defendants argue that dismissal is proper in this case where Plaintiff's sole claim—retaliation in violation of CEPA—is arbitrable.  ECF No. 42 at 7 (citing *Alford*, 975 F.2d at 1164).  In response, Plaintiff merely states that "Plaintiff agrees a stay should be issued if the motion to compel arbitration is granted."  ECF No. 45 at 4.

The Court finds that in this case, dismissal of Plaintiff's claim is proper.  Plaintiff has presented "no justification for a stay rather than a dismissal," and there are no "further actions" this Court foresees taking "beyond executing the judgment upon completion of the arbitration." *See Mayton v. Tempoe, LLC*, No. SA-17-CV-179-XR, 2017 WL 2484849, at *6 (W.D. Tex. June 7, 2017) (dismissing, rather than staying, an action that was wholly arbitrable).

## CONCLUSION

For the reasons stated herein, Defendants' motion (ECF No. 42) is **GRANTED**.  Plaintiff's claim against Defendants is compelled to arbitration, to be conducted consistent with the terms of the Arbitration Agreement.[2]  This case is **DISMISSED WITH PREJUDICE**.  The Clerk is

---

[2] In her response, Plaintiff raises an issue with the supposed inconsistency in the Arbitration Agreement regarding the portion of costs she is required to bear for arbitration.  The Arbitration Agreement provides that "disputes shall be

**DIRECTED** to enter judgment pursuant to Federal Rule of Civil Procedure 58 and to mark this case as closed.

It is so **ORDERED**.

**SIGNED** this 2nd day of July, 2020.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

arbitrated…pursuant to the Employment Rules" of the American Arbitration Association.  ECF No. 42-2 ¶ 1.  The AAA Employment Rules laying out the AAA Administrative Fees provide that, for a dispute filed by an individual, the individual must pay a non-refundable filing fee "capped at $300, unless the clause provides the individual pay less."  ECF No. 45-4.  Plaintiff contends this is inconsistent with another provision of the Arbitration Agreement requiring "[e]ach party shall pay its own costs of arbitration, except that Employer agrees to pay for one day of arbitration hearings."  ECF No. 42-2 ¶ 1.  Defendants reply that there is no inconsistency because there is a difference between costs and fees, but Defendants acknowledge that "Plaintiff's responsibility regarding AAA fees is limited by the AAA schedule to a $300 filing fee" and that Defendants will be responsible for all fees and costs prescribed by the AAA rules.  ECF No. 46 at 5.  Accordingly, the Court finds Plaintiff's request to modify the Arbitration Agreement to limit Plaintiff's portion of the arbitration fees to $300 is moot.